UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH G. RAHME,                                    Case No. 22-11831

      Plaintiff,                                      F. Kay Behm
v.                                                          United States District Judge

FIVE STAR STORE IT LOHR CIRCLE, LLC,
*et al.*,

      Defendants.
_____ /

**ORDER DENYING MOTION TO STRIKE/AND OR DISMISS AND
DISMISSING GROSS NEGLIGENCE CLAIM (ECF No. 12)**

**I.      PROCEDURAL HISTORY**

Plaintiff, Joseph G. Rahme, filed this breach of contract case against

Defendants Five Star Store It Lohr Circle, LLC and SROA 3060 LOHR MI, LLC d/b/a

Storage Rentals of American LOHR arising from a fire that damaged the contents

of two storage units housing Rahme's property.  (ECF No. 1).  Defendants filed a

motion to dismiss the complaint on October 19, 2022.  (ECF No. 7).  District Judge

Mark A. Goldsmith, to whom this matter was previously assigned, issued an order

allowing Rahme the opportunity to amend the complaint.  (ECF No. 9).  Rahme

filed an Amended Complaint (ECF No. 10), and Judge Goldsmith denied the

motion to dismiss as moot.  (ECF No. 11).  Defendants filed a second motion to

dismiss, along with a motion to strike the amended complaint, asserting that it was a "sham" based on factual inconsistencies with the initial complaint.  (ECF No. 12).  This matter is fully briefed.  (ECF Nos. 13, 14).  On July 26, 2023, the court held a hearing on Defendants' motion.

For the reasons set forth below, the court **DENIES** Defendants' motion to strike and/or dismiss the Amended Complaint except that the gross negligence claim is **DISMISSED**.

## II.     THE AMENDED COMPLAINT

This is an action for damages arising from a fire that destroyed Rahme's personal property, contents, and other personal effects that were stored at Defendants' storage facility located in Ann Arbor, Michigan.  (ECF No. 10, PageID.149).  Rahme holds a Ph.D. in history from the University of Chicago.  *Id*. at ¶ 10.  In 2008, he was an associate professor of history at the University of Michigan.  *Id*. at ¶ 11.  In late 2008, Rahme took a leave from the University of Michigan to travel to Beirut, Lebanon to help provide medical care for his dying father.  *Id*. at ¶ 12.  Because Rahme was leaving for Beirut, he contacted Defendants to store personal belongings, including more than 36,000 books that were located in his home's personal library in Michigan.  *Id*. at ¶ 14.  The

Amended Complaint alleges that Rahme entered into a verbal contract with Five Star to rent the two storage units. *Id*. at ¶ 24.

According to the Amended Complaint, when attempting to rent a storage unit from Five Star, he informed their representatives of the amount and quantity of his personal belongings, including more than 36,000 books, which were valued at more than two million dollars. *Id.* at ¶¶ 15-16.  Rahme then alleges that he obtained written permission, apparently separate and apart from the verbal contract, from representatives of Defendants to store these personal belongings and books, valued in excess of two million dollars, at their facility. *Id*. at ¶ 19.  The Amended Complaint alleges that the written permission obtained from Defendants was also destroyed in the fire. *Id.* at ¶ 21.

When Rahme entered into the verbal contract with Defendants, he alleges that Defendants never required him to sign a written contract and never advised him that there was any damage limitation or other limitations if any of his belongings were destroyed by a fire or other casualty. *Id*. at ¶¶ 25-28. Rahme also alleges that Defendants never advised him that there was any requirement to arbitrate any disputes regarding the cause or amount of the personal belongings, contents, personal effects, or books that he was storing at Five Star's facility. *Id*. at ¶ 29.  The Amended Complaint further alleges that the

written permission from Five Star that was destroyed in the fire also did not

include any damage limitation or liquidated damage clause and did not require

him to arbitrate any disputes with Five Star.  *Id*. at ¶ 30.

When he initially stored his contents referenced in Exhibit 1 of his

Amended Complaint, all of these contents were in a good and undamaged

condition.  *Id*. ¶ 34.  The Amended Complaint alleges that Rahme trusted

Defendants to properly store his valuables and contents; to protect them from

any damage; and to take all steps to prevent or protect them from any damage,

loss, or destruction to them in the event of an accident or loss.  *Id*. at ¶ 38.  From

2008 to June 23, 2019, Rahme paid Five Star Storage more than $50,000 in

storage fees.  *Id*. at ¶ 40.

On June 23, 2019, a fire severely damaged several of the storage units at

Five Star's Storage Facility, including both of the storage units that Rahme was

renting from Five Star.  *Id*. at ¶ 42.  The fire destroyed all of the contents stored in

unit G08.  *Id*. at ¶ 43.  The contents stored in unit G09 were severely damaged

when Defendants failed to protect or secure the contents, most of which could

have been salvaged.  *Id*. at ¶¶ 44-45.  Defendants did not contact Dr. Rahme and

did not give him the opportunity to salvage, secure, or otherwise save any of his

contents, valuables, and personal property that were potentially salvageable,

which were in the care, custody, and control of Five Star, under a bailment, along

with the other contents stored in unit G08.  *Id*. at ¶ 51.

**III.    ANALYSIS**

> A.    Standards of Review

>> *1.    Motion to Strike*

A Rule 12(f) motion to strike provides that "[t]he court may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are viewed with

disfavor and are not frequently granted."  *Operating Engineers Local 324 Health*

*Care Plan v. G & W Const. Co*., 783 F.3d 1045, 1050 (6th Cir. 2015).  However, a

12(f) motion is properly granted when "plaintiffs would succeed despite any state

of the facts which could be proved in support of the defense."  *Hemlock*

*Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692,

697 (6th Cir. 2017).  It is a well-established principle that "striking a pleading

should be sparingly used by the courts."  *Brown & Williamson Tobacco Corp. v.*

*United States*, 201 F.2d 819, 822 (6th Cir. 1953).  Motions to strike are granted to

"avoid the expenditure of time and money that ... arise from litigating spurious

issues."  *Operating Engineers Local 324 Health Care Plan*, 783 F.3d at 1050

(quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)).

2.    *Motion to Dismiss*

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face."  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged."  *Id*. at 678.

6

However, a claim does not have "facial plausibility" when the "well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct."

*Id*. at 679.  The factual allegations "must do more than create speculation or

suspicion of a legally cognizable cause of action; they must show entitlement to

relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing

entitlement to relief "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire*

*Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*,

550 U.S. at 555).

     In evaluating the allegations in the complaint, the court must be mindful of

its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At

the motion-to-dismiss stage, the court does not consider whether the factual

allegations are probably true; instead a court must accept the factual allegations

as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed

"on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of the facts alleged is improbable"); *see*

*also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not

countenance ... dismissals based on a judge's disbelief of a complaint's factual

allegations").  Indeed, in assessing the sufficiency of a complaint, the court must

determine only whether "'the claimant is entitled to offer evidence to support the

claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See*

*United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D.

Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

B.    Motion to Strike

Defendants contend that the Amended Complaint should be stricken as a

sham because it so conflicts with the facts set forth in the original complaint.

According to Defendants, the initial complaint admitted that the parties had a

written agreement that was in the Defendants' possession.  (ECF No. 1, ¶ 15).  In

their first motion to dismiss, Defendants admitted that what it claims was the

original contract between the parties was lost in the fire, but it produced a copy

of the standard rental agreement that existed in 2008.  (ECF No. 7-3).  According

to Defendants, the only way that an individual can rent a storage unit is by

agreeing to the terms of their standard written agreement, and only one standard

written agreement was in use at the relevant time.  This standard agreement

contains a number of terms which Defendants contend essentially bar Rahme's

claims.  First, it contains an express limitation of $2,000 on the value of the

property stored, unless prior written permission of Defendants is obtained.  *Id*.

Second, it releases Defendants from all liability for fire loss and negligence.  *Id*.

Third, it contains a mandatory arbitration clause.  *Id*.

Yet, in the Amended Complaint, Rahme now alleges that he entered into a verbal contract with Defendants and further alleges that he was never presented with or asked to sign a written contract.  (ECF No. 10, ¶¶ 24-27).  The Amended Complaint also alleges that Rahme obtained written permission to store property valued over the limit in the standard written agreement, which permission was destroyed in the fire.  Defendants argue that Rahme's repudiation of any written agreement is clearly a sham:

> Query, why would Defendants provide written permission to store property over the value limit in the written Agreement, which per the terms of the Agreement can occur after the execution of the Agreement, yet not seek to enter into a written Agreement with a tenant causing Defendants to lose out on legal protections that make self-storage commercially viable, in addition to rights pursuant to the Michigan Self-Storage Facility Act that are conditioned on providing adequate notice in a written contract? The only explanation for this shambolic allegation is hedging – a tacit admission that Plaintiff's allegation that, after facing Defendants' Motion to Dismiss and this Court's Order (ECF No. 9), Plaintiff now does not recall signing a written agreement (in 2008) is not well based in a good faith belief in the matter asserted and will not likely have evidentiary support after a reasonable opportunity for further investigation or discovery. But for the Agreement, the permission slip was unnecessary.

> Rather, the allegation is a sham – a bad faith proposition
> designed to harass Defendants, cause unnecessary
> litigation costs, and avoid the mandatory alternative
> dispute resolution process in the Agreement.

(ECF No. 12, PageID.207).

Defendants rely primarily on district court cases holding that the court may strike a pleading that is false or a sham under Rule 12(f) or its authority under Rule 11. *See Patriot Logistics, Inc. v. Contex Shipping (NW), Inc.*, 2007 U.S. Dist. LEXIS 102345, at *2-3 (N.D. Ohio June 28, 2007) (citing *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1031 (N.D. Cal. 2004)).  These cases, in turn, rely on a decision from the Federal Circuit, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998).  In *Bradley*, the plaintiff filed a second amended complaint in which he recounted new facts that called into question the facts set forth in the first amended complaint.  *Id*. at 1324.  The court of appeals agreed with the district court that the new facts were a "transparent attempt to conform the facts to the requirements of the cause of action."  *Id*.  The court of appeals, like the district court, found "that the new pleadings exceeded permissible adjustment of factual allegations."  *Id.* at 1325 (citing *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (grant of leave to amend is grounded on expectation of facts reasonably consistent with those already pled).  The court further explained that

the allegations were changed in material ways that were not adequately

explained and thus the trial court did not err in concluding that "as in *Schwartz* [*v.*

*Esmark, Inc.*, No. 78–C–1909, 1996 WL 441022 at *5 (N.D. Ill. Mar. 31, 1990)],

Plaintiff's self-serving explanation [that he was simply complying with the trial

court's directive to state the circumstances surrounding his mistakes] lacks

credibility." *Id.* at 1325

  The analysis in *Bradley* and its progeny has been roundly rejected in

subsequent cases as contrary to the amendments in the Federal Rules of Civil

Procedure. *See e.g.* § 4477.6 Preclusion of Inconsistent Positions—Effects of

Modern Procedure, 18B Fed. Prac. & Proc. Juris. § 4477.6 (3d ed.) ("The modern

package of simplified pleading and searching discovery has been adopted in large

part to enable a party to launch litigation in a state of reasonable—but often

considerable—uncertainty as to the facts."); *Smith v. Haynes & Haynes P.C.*, 940

F.3d 635, 646-648 (11th Cir. 2019) ("[P]ermitting a district court to strike a claim

merely because of inconsistencies in the pleading would be a dangerous

precedent to set." "Inconsistencies in a party's statements during litigation are

supposed to add to the adversary process, not destroy it.").  For example, in *PAE*

*Gov't Serv.'s, Inc. v. MPRI, Inc.*, 514 F.3d 856, 858 (9th Cir. 2007), the court found

that the district court erred when it struck allegations in the amended complaint

as a "sham" because the district court had effectively (and improperly) resolved

those allegations on the merits.  "In other words, it determined that the

allegations in the amended complaint were unfounded because they contradicted

(in the district court's view) earlier allegations PAE made in its original complaint."

*Id*.  The Ninth Circuit found this to be error because the Federal Rules of Civil

Procedure do not authorize a district court to adjudicate claims on the merits at

the motion to dismiss stage in the proceedings; rather, in that context, the court

may only review claims for legal sufficiency.  *Id*. (citing Fed. R. Civ. P. 12(b)).

Indeed, the court pointed out that "[a]djudication on the merits must await

summary judgment or trial."  *Id*.  And while Rule 12(f) authorizes the trial court to

strike "any insufficient defense," and "any redundant, immaterial, impertinent, or

scandalous matter," the new allegations were not any of those things; instead,

the court pointed out that the new allegations were "normal contract claims that

would not be in the least bit objectionable, but for the fact that they appeared, in

the district court's view, to contradict allegations in an earlier version of the

complaint."  *Id.*

      The court went so far as to observe that "[e]ven assuming that the two

pleadings were irreconcilably at odds with each other, this would not, by itself,

establish that the later pleading is a sham."  *Id*.  This is so for a number of reasons:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

*Id*. at 858-859.

The Ninth Circuit further explained that a district court could still find that a complaint was filed in bad faith under Rule 11, but the procedural safeguards found in that rule must be followed and the court would have to make a finding that the plaintiff or its counsel acted in bad faith, not simply that the pleadings were inconsistent.  *Id*. at 859.  In sum, the court found that nothing in the Federal Rules of Civil Procedure precluded a party from filing successive pleadings that make inconsistent or even contradictory allegations and unless "there is a

13

showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11— inconsistent allegations are simply not a basis for striking the pleading." *Id*.

Here, just as in *PAE*, Defendants improperly ask the court to rule on the merits of Rahme's claims in the context of a motion to strike and evaluate the credibility of his allegations.  Defendants may be able to prove at some point in this litigation that Rahme's claims are meritless, but a motion to strike is not the correct procedure for this court to make such a substantive ruling.  Accordingly, the motion to strike is denied.

Further, the court cannot make any determinations regarding whether the Amended Complaint was made in bad faith because it does not appear that Defendants have followed the correct procedures for this court to find bad faith under Rule 11.  Rule 11 precludes filing a motion for sanctions for an alleged violation until the expiration of 21 days after service (but not filing) of the motion. *Kenyon v. Union Home Mortg. Corp.*, No. 1:21-CV-01426, 2022 WL 621552, at *2 (N.D. Ohio Mar. 3, 2022) (citing Fed. R. Civ. P. 11(c)(2)).  The safe harbor provision allows an attorney the opportunity to correct any improper claim or representation without involving a court and promotes some minimal degree of professionalism and civility.  *Id*.  Here, it just appears that Defendants' counsel

14

requested concurrence in the relief sought in the motion, and then filed the

motion the following day.  (ECF No. 12, PageID.187).  Defendants did not comply

with the safe harbor procedure for requesting sanctions under Rule 11 and it also

improperly included its request for sanctions as part of its motion to strike and to

dismiss, instead of filing a "motion for sanctions[, which] must be made

separately from any other motion."  Fed. R. Civ. P. 11(c)(2).  Accordingly, the

request for sanctions under Rule 11 must be denied.

      C.    <u>Subject Matter Jurisdiction</u>

      Based on the $2,000 value limitation in the standard agreement,

Defendants argue that Rahme cannot satisfy the threshold for the amount in

controversy requirement to satisfy diversity jurisdiction, despite the allegations in

the Amended Complaint regarding the loss of personal property valued at

approximately $2 million.  Again, to reach this conclusion, the court would have to

(1) conclude that the allegations in the Amended Complaint are not credible; and

(2) accept Defendants' version of the facts regarding the existence and contents

of the parties' written agreement.  Such conclusions are far outside the reach of

this court in the context of a motion to dismiss, where the court *may not* consider

whether the factual allegations in the complaint are probably true and *must*

accept the factual allegations in the complaint as true, even when skeptical.  *See*

*Twombly*, 550 U.S. at 555.  Accordingly, the motion to dismiss on this basis must be denied.

        D.    <u>Agreement to Arbitrate</u>

The same analysis applies to the claim that the parties agreed to arbitrate this matter as evidenced by the standard agreement from 2008.  The court cannot reach such a conclusion without deciding the merits of Rahme's claims and accepting Defendants' version of the facts as true.  Thus, the motion to dismiss on this basis must be denied.

        E.    <u>Gross Negligence</u>

Plaintiff conceded at the hearing that the gross negligence claim must be dismissed.

**IV.**    **CONCLUSION**

For the reasons set forth above, the court **DENIES** Defendants' motion to strike and/or dismiss the Amended Complaint except that the gross negligence claim is **DISMISSED**.

        **SO ORDERED**.

Date: August 3, 2023                <u>s/F. Kay Behm</u>
                                           F. Kay Behm
                                           United States District Judge